2010 VT 55

## Al BURTON v. JEREMIAH BEACH PARKER RESTORATION AND CONSTRUCTION MANAGEMENT CORP. and Jeremiah Beach Parker

[6 A.3d 38]

No. 09-312

¶ 1. June 21, 2010. Al Burton, the homeowner in this construction-contract dispute, appeals from a superior court order awarding attorney's fees to the contractor, Jeremiah Beach Parker Restoration and Construction Management Corporation. Burton contends the trial court erred in awarding attorney's fees because: (1) the attorney's fee provision of the Prompt Payment Act, 9 V.S.A. § 4007(c), had expired; (2) the contractor was found to be in breach of contract; (3) the contractor was not the "substantially prevailing party" under the Act; (4) the attorney's fee motion was untimely; and (5) Burton was not afforded a reasonable opportunity to be heard. In addition, Burton contends the court erred in denying a motion to extend the appeal period for the underlying judgment. For the reasons set forth below, we affirm.

¶ 2. The basic facts of this dispute may be briefly summarized. Additional material facts will be set forth in the discussion which follows. In February 2002, Burton entered into an agreement with contractor for substantial renovations to Burton's property in Benson, Vermont. Contractor began work, but disputes over certain changes in the renovation plans led to a breakdown in the relationship, and Burton ultimately filed this lawsuit seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, common law fraud, breach of fiduciary duty, violation of the Consumer Fraud Act, and negligent misrepresentation. Contractor counterclaimed for breach of contract, claiming that Burton had wrongfully hired other contractors to perform work specified in the contract, and failed to pay invoices in a timely manner.

¶ 3. The trial court (Judge Katz presiding) granted contractor's pretrial motion to dismiss several of the counts, and the remaining claims were tried before the court (Judge Toor presiding) over several days in March and July 2008. In August 2008, the court issued written findings and conclusions, ruling in favor of Burton on his breach-of-contract claims for defective workmanship on a "ridge beam," for which it awarded damages of $2,000, and overbilling, for which it awarded damages of $6,627, but found no evidence to support Burton's remaining claims for which he had sought extensive additional damages. The court ruled for contractor on its counterclaim, awarding damages of $4,901 plus interest (later calculated to total about $3,160), and directed the parties to submit a proposed judgment order. Thereafter, on October 20, 2008, the court issued a written judgment order which, after deducting contractor's award, resulted in a net judgment to Burton of $566. Burton did not appeal.

¶ 4. Contractor then moved for an award of attorney's fees under the Prompt Payment Act, which provides that, "[n]otwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorneys' fees in an amount to be determined by the court or arbitrator, together with expenses." 9 V.S.A. § 4007(c). The court granted the motion in March 2009, finding that contractor was the substantially prevailing party, and ordered contractor to submit an affidavit detailing its fees "so that Burton may be heard on their reasonableness." Thereafter, with the exception of several minor charges, the court found the amounts claimed to be reason-

able and awarded contractor attorney's fees totaling $81,043 plus costs of $8,124. In the same order, the court denied Burton's motion to permit an appeal from the underlying judgment. This appeal followed.

¶ 5. Burton first contends the trial court lacked statutory authority to award attorney's fees because the fee provision of the Prompt Payment Act, 9 V.S.A. § 4007(c), had expired under a "sunset" provision prior to the effective date of an amendment repealing the expiration clause. Burton did not raise this issue with the trial court in his opposition to the motion for attorney's fees and therefore did not preserve it for review on appeal. *Progressive Ins. Co. v. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 (to rely upon an argument on appeal, appellant must properly preserve it by raising it with the trial court in a timely manner and with specificity and clarity).

¶ 6. Burton did eventually raise the issue below, but not in a timely manner. In granting the motion for attorney's fees, the trial court ordered contractor to submit an affidavit "detailing the fees so that Burton may be heard on their reasonableness" and authorized Burton to submit within ten days "written objections" to contractor's submission. About a month later, Burton filed a response citing the sunset provision and "ask[ing] the Court to reconsider its award of attorney['s] fees." The motion to reconsider was plainly untimely, however, and the trial court properly denied it. See V.R.C.P. 59(e) (motion to alter or amend must be filed no later than ten days after entry of judgment). Burton maintains that the court's decision granting the motion for attorney's fees was not a judgment, that the court contemplated additional briefing, and that Burton's subsequent pleading was not therefore a motion to reconsider but merely a supplemental filing. The arguments are unpersuasive. The order granting contractor's motion for attorney's fees was plainly a judgment on the merits of the motion and merely authorized contractor to submit a follow-up affidavit outlining the fees reasonably incurred and Burton to register any objections thereto. Indeed, Burton's subsequent pleading in which it asked the court to "reconsider its award of attorney's fees" acknowledged as much. Accordingly, we find that Burton's challenge to the validity of the statute was not properly raised below, and therefore decline to address it.[1]

¶ 7. Burton next contends the trial court violated public policy in awarding attorney's fees to a party in breach of contract. Burton relies on *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 8, 178 Vt. 77, 872 A.2d 292, where we upheld the trial court's finding that it would be unfair to base an award of attorney's fees on a contract which the contractor had violated. As the trial court here correctly observed, however, our holding in *Fletcher Hill* was based on a contractual fee provision and did not apply to the

---

[1] In a variation on Burton's argument, the dissent maintains that the order granting attorney's fees was not a judgment but an "interlocutory" order. Even if that were the case, the trial court's order made it clear that the sole issue it was reserving for review was the reasonableness of the fees sought by contractor, and it was fully within the court's authority to conclude that Burton's subsequent argument relating to the "sunset" provision of the Prompt Payment Act was unrelated to this reserved question, dilatory, and not properly raised. Accordingly, the issue was not properly preserved for review on appeal. See *Reed v. Zurn*, 2010 VT 14, ¶ 12, 187 Vt. 613, 992 A.2d 1061 (mem.) (holding that a brief post-judgment argument is not "a substitute for a timely legal argument" and therefore that the issue "was not preserved for review on appeal").

statutory fee provision of the Prompt Payment Act, which we analyzed separately. Accordingly, the claim has no merit.

¶ 8. Burton further contends the trial court erred in determining that contractor was the "substantially prevailing party" under 9 V.S.A. § 4007(c). Burton notes that, even after set-offs, he remained the recipient of a net judgment of $566. As we explained in *Fletcher Hill*, 2005 VT 1, ¶ 14, however, identifying which — if any — of the parties substantially prevailed under § 4007(c) "falls within the trial court's discretion, and does not flow automatically from the calculation of the net victor." Indeed, relying on the plain language of the statute and decisions from other jurisdictions, we emphatically declined "to read 'substantially' out of § 4007(c) by equating the 'substantially prevailing party' with the party holding a net judgment." *Id.* ¶ 17. We concluded, rather, that in determining the prevailing party a trial court has greater discretion and may essentially apply — as one court has stated — a more "flexible and reasoned approach" focused on determining which side achieved a "comparative victory" on the issues actually litigated or the greater award "proportionally" to what was "actually sought." *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶¶ 12, 14, 26, 94 P.3d 270 (quotation omitted); see also *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1201 (Fla. 2009) (holding that obtaining a "net judgment is significant but does not necessarily control the determination of the 'prevailing party'" and that "the trial court must have flexibility to consider the equities and determine which party prevailed on the significant issues"); *Zavatchen v. RHF Holdings, Inc.*, 2006 PA Super 240, ¶ 6, 907 A.2d 607 (rejecting the claim that "determining whether a party substantially prevails turns on a simple mathematical comparison of the parties' respective recoveries"); *Keystone Elevator Co. v. Johnson & Wales Univ.*, 850 A.2d 912, 918-19 (R.I. 2004) (rejecting the notion that determining the prevailing party is "susceptible to mathematical precision" and holding that "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court") (quotation omitted).

¶ 9. Assessed in light of this flexible standard, we find no basis to conclude that the trial court abused its discretion in finding contractor to be the substantially prevailing party. Relying expressly on *Fletcher Hill*, the trial court here explained its reasoning clearly and succinctly, observing that, although it had awarded some damages to both parties, it had "ruled against Burton on most of his claims" and as a result Burton had "recovered [only] a tiny fraction of what he sought." The record amply supports these findings. Although Burton asserted six separate grounds of recovery, contractor prevailed on its pretrial motion to dismiss the claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and breach of contract predicated upon contractor's alleged failure to submit the subcontract work to competitive bidding. As to the remaining claims, Burton's trial memorandum alleged five separate construction defects for which he sought damages totaling over $108,000, and additional consumer fraud claims for which he sought compensatory damages in excess of $224,000 as well as exemplary damages of $672,160. After several days of trial, the court dismissed all but three of the construction-defect claims. In its written decision following the conclusion of trial, the court found for Burton on only one of the defect claims, awarding damages of $2,000, and one breach-of-contract/overbilling claim for $6,627. The court further found that the evidence failed to support Burton's additional claims that contractor had breached the contract by failing to com-

plete the job, breached the covenant of good faith and fair dealing, violated the Consumer Fraud Act, or made false representations. The trial court found for contractor on its counterclaim, awarding damages and interest totaling over $8,000, which resulted in a net recovery to Burton of $566.

¶ 10. The record thus firmly supports the trial court's finding that contractor not only prevailed on its own counterclaim for breach of contract, but also successfully defended against the bulk of Burton's claims. The court was therefore well within its discretion in concluding that, all things considered, contractor was the substantially prevailing party in this lawsuit despite the fact that Burton was the "net victor" to the tune of $566. As noted, we have squarely rejected the notion that "the party with a net verdict is automatically the substantially prevailing party." *Fletcher Hill*, 2005 VT 1, ¶ 15. Furthermore, while *Fletcher Hill* merely affirmed the trial court's decision not to award attorney's fees to the party obtaining a net judgment, other courts have specifically upheld attorney's fee awards to a party that failed to obtain a net monetary judgment but otherwise achieved the greater success on the issues litigated. See, e.g., *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex. 1985) (per curiam) (holding that, although contractor obtained a net judgment after set-offs of over $2,000, the trial court should have awarded attorney's fees to homeowner as the prevailing party on its counterclaims for construction defects and fraud); *Occidental/Neb. Fed. Sav. Bank v. Mehr*, 791 P.2d 217, 221-22 (Utah Ct. App. 1990) (applying a "flexible and reasoned approach" the court concluded that defendants were the statutorily "prevailing" party where the plaintiff had claimed $600,000 in damages but recovered only about $7,300). We thus find no basis to conclude that the trial court abused its discretion in determining that

contractor was the substantially prevailing party.

¶ 11. The dissent's arguments to the contrary are unpersuasive. First, the dissent fails to consider the trial court's detailed findings rejecting nearly all of Burton's construction-defect claims, as well as its related findings carefully explaining its decision to award attorney's fees to contractor as the prevailing party. These findings are amply supported by the record evidence, and we are not at liberty to second-guess them. See *Fletcher Hill*, 2005 VT 1, ¶ 12 (determination of which party prevailed is committed to the trial court and is reviewable only for abuse). The dissent also repeats Burton's assertion that the law precludes a finding that contractor was the prevailing party because contractor did not receive a "net recovery." As discussed, however, our law is to the contrary. The dissent's expressed concern that our holding in this regard will somehow discourage or disadvantage pro se homeowners at the expense of predatory contractors is entirely unfounded. It is, after all, the trial court not the contractor that determines the prevailing party at the conclusion of a trial, and we are confident in the trial courts' ability to distinguish frivolous from meritorious claims, to properly balance competing monetary awards or other considerations, and to vigilantly protect the rights and interests of all litigants. Finally, the dissent challenges our reliance on certain out-of-state decisions. Although these cases plainly speak for themselves, their support for a flexible rather than a mechanistic approach to determining the prevailing party in construction-contract disputes is clear, and the dissent's characterization of them as "unavailing" is simply erroneous. See *Trytek*, 3 So. 3d at 1201 (reaffirming its earlier holdings "that [when] a claimant recovers a net judgment [it] is significant but does not necessarily control the determination of

the 'prevailing party,' and the trial court must have flexibility to consider the equities and determine which party prevailed on the significant issues"); *Zavatchen*, 2006 PA Super 240, ¶ 6 (flatly rejecting the "assertion that determining whether a party substantially prevails turns on a simple mathematical comparison of the parties' respective recoveries"); *Keystone*, 850 A.2d at 918-19 (rejecting a "mathematical" test of determining the prevailing party in favor of a test predicated on determining which party "prevailed on the significant issues") (quotation omitted); *Matthews*, 685 S.W.2d at 650 (relying on its holding in *McKinley v. Drozd*, 685 S.W.2d 7, 8 (Tex. 1985), which rejected the proposition that a party claiming damages under the Texas deceptive practices act must receive a net recovery in order to obtain attorney's fees); *Whipple*, 2004 UT 47, ¶ 26 (reaffirming its adherence to a "flexible and reasoned approach" rather than a straight "net judgment rule" in determining the successful party).

¶ 12. Burton next contends the trial court erred in awarding attorney's fees incurred in defending the claims that contractor ultimately lost — specifically, the claims for defective workmanship on the ridge beam and overbilling. Burton asserts that the court improperly failed to address this argument in its decision and unfairly denied Burton a hearing on the issue. Burton's assertion to the contrary notwithstanding, the trial court specifically addressed and rejected this argument, finding that Burton had "fail[ed] to specify which portions of the fee affidavit it feels are inappropriate" and that, in any event, Burton had cited "no authority to suggest that the court must break down the winning and losing claims in determining the reasonableness of [the] fee award." The court's ruling was correct. See *Elec. Man, Inc. v. Charos*, 2006 VT 16, ¶ 9, 179 Vt. 351, 895 A.2d 193 (rejecting a request under § 4007(c) to break the lawsuit into " 'a series of discrete claims so that the hours expended can be divided on a claim-by-claim basis' " and only a portion thereof compensated) (quoting *L'Esperance v. Benware*, 2003 VT 43, ¶ 24, 175 Vt. 292, 830 A.2d 675). As for a hearing on the motion, the trial court found that neither side had requested such a hearing and that no factual disputes required one. See V.R.C.P. 78(b)(2) (a hearing may be provided "if requested," but the court may dispense with a hearing when it "finds there to be no genuine issue as to any material fact"). Burton has not shown these findings to be incorrect.

¶ 13. Burton additionally contends the court erred in awarding contractor its litigation costs totaling $8,124. Burton asserts that contractor was not the "prevailing" party under Vermont Rule of Civil Procedure 54(d)(1), which states that "[c]osts other than attorneys' fees shall be allowed as of course to the prevailing party." He also argues that the court failed to make the requisite findings and conclusions on the issue. The claims lack merit. Although contractor specifically requested an award of costs in addition to attorney's fees, the court noted that Burton had "not objected to the award of costs." This finding, which Burton has not challenged on appeal, plainly bars any objection to the award of costs on appeal. *Brown*, 2008 VT 103, ¶ 6. The record also fails to show that Burton requested findings and conclusions on the award of attorney's fees and costs. See V.R.C.P. 52(a)(1) (court shall "upon request of a party" enter findings and conclusions within five days after notice of its decision). Accordingly, we find no error in the court's award of costs.

¶ 14. Burton next claims that contractor's motion for attorney's fees was untimely. Burton argues in this regard that "judgment" was entered with the issuance of the trial court's findings and conclusions on August 21, 2008, rather than

its judgment order on October 20, 2008, so that the motion for attorney's fees filed on November 3, 2008 was not within the requisite fourteen days "after entry of judgment." V.R.C.P. 54(d)(2)(B). Burton notes that, in addition to memorializing the court's findings and conclusions, the docket entries for August 21, 2008, also state "[j]udgment for [p]laintiff" and "[c]ase closed." Burton's premise is fundamentally flawed. Rule 58 of the Vermont Rules of Civil Procedure provides that "[e]very judgment and amended judgment shall be set forth on a separate document," V.R.C.P. 58(a), and further provides that, upon a jury verdict or decision by the court, the judge "shall promptly approve and sign the judgment." V.R.C.P. 58(b). We have thus held that Rule 58 *requires* that the court approve and sign a written judgment" and that "[w]ithout such an order, the docket entry of the court's decision does not constitute entry of judgment and does not commence the running of the appeal period." *Baker v. Town of Goshen*, 169 Vt. 145, 150, 730 A.2d 592, 596 (1999) (emphasis added). Thus, the findings and conclusions issued by the court on August 21, 2008, plainly did not constitute the "judgment," and the docket entries for that date did not convert the findings and conclusions into an entry of judgment.[2]

---

[2] Burton also suggests that entry of judgment must have occurred on August 21, 2008, because Jeremiah Parker filed a motion for attorney's fees on his own behalf on September 4, 2008, and the court denied it on October 20, 2008 on the ground that the corporation, not the individual, was the contractor. The argument is patently without merit. Rule 54 merely provides that a motion for attorney's fees must occur within fourteen days of entry of judgment. V.R.C.P. 54(d)(2)(B). The rule does not bar a party from filing such a motion after the court's decision but before the entry of judgment.

Burton's claim that the attorney's fee motion was untimely lacks merit.

¶ 15. Finally, Burton contends the court erred in denying his motion to extend the appeal period for the underlying judgment. As noted, the trial court entered judgment on October 20, 2008, so that the normal thirty-day appeal period expired in late November. Burton did not appeal the judgment, but subsequently contested the attorney's fee issue. Following the court's decision in March 2009 awarding attorney's fees to contractor, however, Burton filed a motion seeking to extend the period in which to appeal the underlying judgment. Burton's motion explained that, although he had previously "decided, based on a number of factors, not to appeal," he had reconsidered that decision "in the wake of the [c]ourt's award of attorney['s] fees." The motion was based on Vermont Rule of Civil Procedure 58(c), which provides that, while "[e]ntry of the judgment shall not be delayed, nor the time for appeal extended, for the taxing of costs or the award of attorneys' fees," the court may toll the appeal period "when a timely motion for attorneys' fees is made" and "before a notice of appeal has been filed and has become effective" by "order[ing] that the motion have the same effect under Rule 4 of the Vermont Rules of Appellate Procedure as a timely motion under Rule 59."

¶ 16. Burton's reliance on this provision is misplaced. Although contractor filed a timely motion for attorney's fees, Burton did not request, nor did the court order, that the appeal period be tolled before it expired in late November. As the trial court here correctly observed, Rule 58 plainly contemplates that any order extending the appeal period "must be made during the appeal period that otherwise applies." The rule does not extend the court's authority indefinitely. Burton claims that he did not receive notice of the attorney's fee motion until January 2009,

and therefore could not have made a timely request under Rule 58, but cites nothing in the record to support the claim. Moreover, even after he admittedly received notice of the motion in January 2009, he waited three additional months, until April 2009, to file his request. We thus find no basis to disturb the court's ruling.

*Affirmed.*

¶ 17. **Zonay**, District Judge, Specially Assigned, concurring and dissenting. While I concur with the majority opinion as it relates to the timeliness of the attorney's fee request, and the denial of Burton's Rule 58 motion, I dissent as to the remaining issues. The majority fails to address whether the attorney's fee provision of the Prompt Payment Act (the Act), 9 V.S.A. § 4007(c), expired on June 30, 1996, instead concluding that Burton failed to preserve this legal issue for our review. I believe the issue was preserved and that 9 V.S.A. § 4007(c) expired on June 30, 1996. Even if § 4007(c) is in effect, however, I do not agree that contractor is the substantially prevailing party. Accordingly, I would vacate the award of attorney's fees under the Act.

¶ 18. The majority reasons that because Burton did not raise his statutory argument in his initial opposition to contractor's motion for attorney's fees, he did not preserve it for our review. This approach misapplies both the rules of civil procedure and our rules on preservation.[3]

---

[3] The majority cites *Progressive Insurance Co. v. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666, as support for the proposition that to preserve an issue an appellant must raise it with the trial court "in a timely manner and with specificity and clarity." *Ante*, ¶ 5. In fact, *Brown* holds only that a party must present the issue to the trial court "with specificity and clarity." 2008 VT 103, ¶ 6 (quotation

The record indicates that contractor requested attorney's fees in a November 2008 motion, which Burton opposed. The court granted contractor's motion in a March 2009 entry order, finding that contractor was the substantially prevailing party under § 4007(c). The court ordered contractor to submit an affidavit detailing the fees so that Burton could be heard on their reasonableness, following which Burton would have ten business days to file written objections to the fee request. Contractor filed its affidavit on March 27. Burton responded on April 14, and again on April 22. This later filing raised and briefed the statutory sunset issue, asking the court in relevant part to reconsider its initial ruling on the merits of contractor's motion.

¶ 19. The majority construes Burton's April 22 filing as a motion to alter or amend under Vermont Rule of Civil Procedure 59(e), and concludes that the filing was untimely because it was not filed within ten days "after the entry of the judgment." This is error because no judgment within the meaning of the rules had yet been entered. Rule 59(e) applies to final appealable judgments, not to interlocutory orders. It is designed to allow parties to "take advantage of the court's power to correct a judgment in order to avoid an appeal and its attendant delay." *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1163 (1986). Consistent with this purpose, a timely filed Rule 59 motion "suspends the finality of the judgment," *id.*, and tolls the running of the appeal period, V.R.A.P. 4(b).

¶ 20. The trial court's ruling in this case, by its own terms, was not a final judgment that set forth the actual award but merely an interlocutory order from

---

omitted). Obviously, an argument must be "timely" in the sense that it was raised before the trial court, but, as discussed below, this requirement was plainly satisfied here.

which no appeal could be taken. See *Morissette v. Morissette*, 143 Vt. 52, 58, 463 A.2d 1384, 1388 (1983) (holding that for a judgment to be final it must make a final disposition of the subject matter before the court); see also V.R.C.P. 54(d)(2)(C) (stating that trial court shall enter "a separate judgment" as provided in Rule 58 in ruling on motion for attorney's fees); V.R.C.P. 54(a) (" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). As this Court has held, "until final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order." *Kelly v. Town of Barnard*, 155 Vt. 296, 307, 583 A.2d 614, 620 (1990) (quotation omitted); see also *Dudley v. Snyder*, 140 Vt. 129, 131, 436 A.2d 763, 764-65 (1981) (although defendant labeled his motion as one for relief from judgment under Rule 60, motion was in substance a request to revise an interlocutory order, and, as such, it was within the trial court's plenary power to revise its decision and afford such relief as justice requires); *Brown v. Tatro*, 136 Vt. 409, 411, 392 A.2d 380, 382 (1978) ("[A]n interlocutory order or judgment is left within the plenary power of the court that rendered it to afford such relief as justice requires . . . ."). Burton was not required under Rule 59 to file his opposition to the award of attorney's fees within ten days, and the trial court retained its ability to consider the legal issue raised in his filing.

¶ 21. While the rules did not impose a ten day requirement, the trial court's March 23 ruling itself contained such a requirement. Notably, however, the trial court did not decline to consider the sunset issue on the basis of the date of Burton's filing. Rather, in its July 31, 2009 ruling granting the motion for attorney's fees, the trial court acknowledged Burton's filing and wrote: "Treating those objections as a motion to reconsider, they are denied." While I agree with the majority that the trial court was not required

to reach the merits of the motion for reconsideration, I do so on the basis of the time limit set forth in the March 23 ruling, not Rule 59. Regardless, I cannot agree that the trial court's order can be fairly read as an indication that it did not consider the merits of the opposition.

¶ 22. That the trial court may not have been obligated to consider the opposition under its March 23 ruling does not mean that it did not have the ability to consider it on its merits, or that it did not actually consider it. Without a clear indication that the trial court was declining to address the merits of the opposition as a sanction for the late filing, I cannot read its decision as one where it did not consider it. Given that a trial court reaches the merits of motions to reconsider filed under Rule 59, the language used by the trial court here necessarily means that the merits were considered, but that they did not alter the court's decision.[4]

¶ 23. It is clear that the sunset issue was directly raised before the trial court and, in my view, was properly preserved. As this Court has held, "[t]he purpose of the [preservation] rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review." *In re Entergy Nuclear Vt. Yankee, LLC*, 2007 VT 103, ¶ 9, 182 Vt. 340, 939 A.2d 504 (quotation omitted). "The preservation rule is satisfied when the trial court had a fair opportunity to consider, evaluate and rule upon the question raised on appeal." *Vt. Built, Inc. v. Krolick*, 2008 VT 131,

_____

[4] The majority reasons that, even if the trial court's first ruling was interlocutory, the court acted within its authority in concluding "that Burton's subsequent argument relating to the 'sunset' provision of the Prompt Payment Act was unrelated to [the question of the reasonableness of the attorney's fees], dilatory, and not properly raised." *Ante*, ¶ 6 n.1. In fact, the trial court made no such findings in this case.

¶ 10, 185 Vt. 139, 969 A.2d 80 (quotation omitted). Burton's opposition clearly advanced the argument about the sunset provision, and the trial court had a fair opportunity to "consider, evaluate and rule upon" this question in its July 31, 2009 ruling. Thus, I believe the issue is properly before this Court and must be addressed on its merits. Cf. *ante*, ¶ 6 n.1 (citing *Reed v. Zurn*, 2010 VT 14, ¶ 12, 187 Vt. 613, 992 A.2d 1061 (mem.) (holding that issue not preserved for this Court's review where party did not raise legal argument at trial with specificity, but instead attempted — in a one-sentence argument — to raise issue post-judgment by citing to vague trial testimony)).

¶ 24. Burton correctly asserts that the attorney's fee provision is no longer in effect. The Act, as originally enacted, stated that "[t]he provisions of 9 V.S.A. § 4007(b) and (c) shall expire on June 30, 1996." See 1991, No. 74, § 2 (effective Jan. 1, 1992). The Legislature attempted to strike this language in 1996. See 1995, No. 66 (Adj. Sess.), § 1. The bill passed by the Legislature, and signed by the Governor in April 1996, did not specify an effective date, however. Thus, the revision became effective on July 1, 1996, after the statutory provisions had expired. See 1 V.S.A. § 212 ("Laws enacted by the general assembly shall take effect on July 1 next following the date of their passage, unless it is otherwise specifically provided.").

¶ 25. The problem with this is simple: one cannot repeal the sunset provision on July 1, 1996, when the statute had already expired on June 30, 1996. While I recognize the clear legislative intent to repeal the sunset provision and to have the statutory provisions continue in effect after June 30, 1996, this is not a case of the courts interpreting an ambiguous statute to effectuate legislative intent. See, e.g., *Dep't of Corr. v. Human Rights Comm'n*, 2006 VT 134, ¶ 7, 181 Vt. 225, 917 A.2d 451 (stating that the paramount goal of statutory interpretation is to effectuate the intent of the Legislature and that this requires examining not only statutory language and legislative history, but also the legislative policies that the statute was designed to implement). Rather, the Court is obligated to enforce statutes as they are in effect or — in the instant case — not in effect. To conclude that 9 V.S.A. § 4007(b) and (c) somehow saw the light of dawn after they expired on June 30, 1996 would effectively serve as the Court enacting a statute — a role reserved exclusively for the Legislature.

¶ 26. It also bears noting that, in declining to address the issue, the majority is leaving the validity of these statutory provisions for a future case. In my view, this imparts unnecessary uncertainty between those whose relationships are thought to fall within the Act, leads to legislative uncertainty since there is no determination from the Court as to whether the statutory provisions exist, and, most importantly, fails to address a properly preserved legal issue between the parties to the dispute now pending before the Court.

¶ 27. In sum, I would hold that 9 V.S.A. § 4007(b) and (c) expired and, as such, there was no legal basis to make a statutory award of attorney's fees in favor of contractor. Further, though the contract may have contained a provision for attorney's fees, the trial court's conclusion that contractor breached the construction contract precludes any award of attorney's fees under the contract. See *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 8, 178 Vt. 77, 872 A.2d 292. Accordingly, I would vacate the award of attorney's fees.

¶ 28. Even assuming that 9 V.S.A. § 4007(c) was in force and applicable to the parties' contractual relationship, I cannot agree with the majority that contractor was the "substantially prevailing party." Under the Act, a homeowner is allowed to withhold "payment in whole or in part under a construction contract in an amount equaling the value of any good

faith claims against an invoicing contractor . . . , including claims arising from unsatisfactory job progress, defective construction, disputed work or third-party claims." *Id.* § 4007(a). "An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner . . . against which an invoicing contractor . . . is seeking to recover payment." *Id.* § 4007(b). Finally, the Act provides that "the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorneys' fees in an amount to be determined by the court . . . , together with expenses." *Id.* § 4007(c).

¶ 29. In this case, Burton not only brought two claims in good faith equal to the amount he withheld from contractor, but he actually recovered on those claims — overbilling and faulty construction — to the point where contractor owed him money. The amount that Burton withheld bore a reasonable relation to the value of the claims he held in good faith; thus, the amount was not "wrongfully withheld." See *id.* § 4007(b). Under the Act, it was Burton's right to withhold this money, as § 4007(a) states that "[n]othing in this chapter shall prevent an owner" from doing so in good faith.

¶ 30. Finally, contractor could not have been the substantially prevailing party in the proceeding because he did not actually recover any payment from Burton. Because of contractor's overbilling and faulty construction work, Burton had already overpaid the contractor by $566. Contractor was never owed anything.

¶ 31. Under the majority's reasoning, a contractor who overbills a client and provides faulty construction work may recover attorney's fees even if the homeowner proves that all money withheld was withheld in good faith, as the statute allows. A contractor can accom-

plish this outcome as long as a homeowner simply brings too many claims against the contractor which cannot be proven (even if they were brought in good faith), despite the fact that the homeowner has not withheld any money for the nonprovable claims. Thus, while the purpose of the Act was to give a contractor a statutory right to recover for payments "wrongfully withheld," the majority's holding will allow a contractor to recover attorney's fees even if he was not only never owed one cent, but in fact owed his client money.

¶ 32. The problem is even more apparent if the party roles of the homeowner and contractor are reversed, as it should not matter for prevailing-party status who was the plaintiff and who was the defendant. Take, for example, a case where a plaintiff-contractor brings a breach-of-contract claim for nonpayment against a defendant-homeowner. The defendant-homeowner brings counterclaims for overbilling, faulty construction, consumer fraud, and various other claims. Many of the homeowner's claims survive summary judgment. At trial, the plaintiff-contractor wins on his claim of breach of contract. However, the defendant-homeowner wins on his claims of overbilling and faulty construction. The plaintiff-contractor had overbilled and provided faulty construction to the homeowner in an amount that was more than the defendant-homeowner withheld in breach. The plaintiff-contractor ends up owing the defendant-homeowner money. I fail to see how the plaintiff-contractor can be a substantially prevailing party in this situation. Yet, this was the situation in the instant case, only with the parties' roles reversed.

¶ 33. As if the implications of the majority's holding here were not serious enough at the superior court level, they are even more concerning at the small claims level, where a homeowner is more likely to appear pro se. Under the majori-

ty's reasoning, a pro se homeowner who withholds money from a contractor in good faith, and in fact recovers from the contractor, will have to pay the contractor's attorney's fees if the homeowner brought too many claims or counterclaims which he could not prove. Even if the homeowner can prove overbilling and faulty construction, as in this case, the contractor can still recover attorney's fees if represented by counsel. A pro se homeowner, who believed he or she had won at trial, may end up owing the contractor many times more in attorney's fees. This creates an incentive for contractors to overbill their clients and hope that the client brings too many claims that he or she cannot prove. The result is a chilling effect on plaintiffs not to bring otherwise good faith claims or counterclaims against a contractor whenever a contractor has asserted a prompt payment claim or counterclaim.

¶ 34. Reversing the attorney's fee award in this case is consistent with previous decisions addressing the attorney's fee issue. See, e.g., *Fletcher Hill*, 2005 VT 1; *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 247, 776 A.2d 413, 420 (2001) (affirming decision that contractor was the "substantially prevailing party" where all of plaintiff's claims against it were dismissed on summary judgment). The Court's decision in *Fletcher Hill* stands only for the proposition that the "net victor" in a construction contract dispute will not automatically be entitled to attorney's fees as the "substantially prevailing party." 2005 VT 1, ¶ 14. The Court did not hold, as the majority states, *ante*, ¶ 8, that the trial court should focus on determining which side achieved a comparative victory on the issues actually litigated or the greater award proportionally to what was actually sought. The holding of *Fletcher Hill* is much more limited.

¶ 35. In *Fletcher Hill*, a jury rendered a split decision in a construction contract dispute, awarding $15,067 to the contractor for breach of contract, and $4,000 to the homeowner based on the contractor's failure to perform in a workmanlike manner. The trial court found that no party had substantially prevailed and declined to award attorney's fees under 9 V.S.A. § 4007(c). The contractor appealed, arguing that it was entitled to attorney's fees because there was a net award in its favor. This Court rejected the argument that the net victor was always entitled to attorney's fees, reasoning that such an approach would effectively read the word "substantially" out of the statute. *Id.* ¶ 17. The Court did not consider whether the net-loser — in that case, the homeowner — could be considered the "substantially prevailing party." In other words, the Court held that it is not enough under 9 V.S.A. § 4007(c) to simply "prevail" by obtaining a net judgment in one's favor; a party must instead "substantially prevail." In the instant case, Burton was the "net victor," and *Fletcher* holds only that he was not automatically entitled to attorney's fees as a result. It does not follow from the Court's holding in *Fletcher* that a contractor who owes his client money for breach of contract can be considered a "substantially prevailing party" under 9 V.S.A. § 4007(c).

¶ 36. With one exception, the remaining cases cited by the majority do not involve the construction of statutory language similar to 9 V.S.A. § 4007(c) and, thus, are not controlling. See *Fletcher*, 2005 VT 1, ¶ 16 (cases involving different statutory language do not control this Court's interpretation of 9 V.S.A. § 4007(c)). In *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649 (Tex. 1985) (per curiam), for example, the court applied a provision in the state's consumer protection act, which allowed consumers who prevail on claims brought under the Texas Deceptive Trade Practices-Consumer Protection Act to be awarded court costs and reasonable and necessary attorney's fees.

*Id.* at 650 (citing *McKinley v. Drozd*, 685 S.W.2d 7, 8-9 (Tex. 1985)). The *Drozd* court held that this provision must be liberally construed in light of the remedial purpose of the consumer protection act, and concluded that consumers could recover attorney's fees "incurred in the successful prosecution of a claim for damages under the Act, even though the claim might be entirely offset by a claim of an opposing party." 685 S.W.2d at 9. The *Matthews* court merely reiterated this conclusion and applied this standard to the case before it. 685 S.W.2d at 650. The fact that one can "prevail" when one recovers damages on a Texas consumer-protection claim says nothing about when a party should be considered a "substantially prevailing party" for purposes of 9 V.S.A. § 4007(c). The remaining cases cited by the majority are similarly unavailing. See *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1196, 1201-02 (Fla. 2009) (to evaluate parties' entitlement to attorney's fees as the "prevailing party," trial court should look to which party prevailed on the "significant issues," and fact that claimant recovers a net judgment is a significant, though not controlling, factor); *Keystone Elevator Co. v. Johnson & Wales Univ.*, 850 A.2d 912, 918-19 (R.I. 2004) (construing phrase "prevailing party" in attorney's fee provision and adopting Florida "significant issues" test); *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 11, 94 P.3d 270 (interpreting meaning of phrase "successful party" for purposes of recovering attorney's fees, and stating that a good starting point for analysis is which party won a "net judgment" in its favor).

¶ 37. The Pennsylvania Superior Court's decision in *Zavatchen v. RHF Holdings, Inc.*, cited by the majority, *ante*, ¶ 8, supports a conclusion opposite to that reached by the majority here. 2006 PA Super 240, 907 A.2d 607. In *Zavatchen*, a claimant filed suit against several contractors, seeking damages of approximately $90,000. The contractors denied liability and requested reimbursement of their attorney's fees under the state's Contractor and Subcontractor Payment Act (CSPA). The court entered a verdict in favor of claimant for $300. The contractors then requested attorney's fees, arguing that they were the "substantially prevailing party" under the CSPA given the claimant's small recovery in proportion to his claimed damages. *Zavatchen*, 2006 PA Super 240, ¶ 5; see also *Fletcher Hill*, 2005 VT 1, ¶ 17 (noting that Pennsylvania statute allowing for recovery of attorney's fees in construction-contract disputes is identical to Vermont statute). The trial court denied the contractors' request, and the superior court affirmed its decision on appeal. The court rejected the contractors' argument that they "substantially prevailed" because the claimant was awarded less than one percent of the damages sought in his complaint, as well as their assertion that "determining whether a party substantially prevails turns on a simple mathematical comparison of the parties' respective recoveries." *Zavatchen*, 2006 PA Super 240, ¶ 6. It found that the contractors "did not clearly prevail in the sense that a judgment was entered in their favor," nor had they shown that the claimant's claim was "groundless or frivolous." *Id.* ¶ 11. The same can be said in the instant case.

¶ 38. It simply makes no sense to conclude that contractor substantially prevailed in its quest to recover payment within the scope of the Act, as required by 9 V.S.A. § 4007(c), where contractor recovered no payment whatsoever. This conclusion ignores the plain language of the statute, and it does not serve the purpose of the Act. See *Elec. Man, Inc. v. Charos*, 2006 VT 16, ¶ 12, 179 Vt. 351, 895 A.2d 193 ("The purpose of the prompt payment act is to provide protection against nonpayment to contractors and subcontractors."). Indeed, the Court cau-

tioned against this very result in *Electric Man*, explaining that if the attorney's fee provision were construed too narrowly, "owners who demonstrate that they should not have to pay a contractor's bill because of nonperformance or poor-quality work may end up . . . paying attorneys' fees that exceed the amount of their nonpayment." *Id.* In this case, Burton has been ordered to pay approximately $90,000 in attorney's fees and costs to contractor, despite the fact that he withheld payment in good faith and prevailed in the proceedings below. The award of attorney's fees and costs is unfounded both statutorily and logically, and it should be vacated.

¶ 39. I am authorized to state that Justice Johnson joins in this dissent.

Motion for reargument denied July 22, 2010.